# IN THE COURT OF APPEALS OF IOWA

No. 23-0087
Filed April 24, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**NICOLAS ROSS HEIMS,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Tom Reidel (trial)

and Joel W. Barrows (pretrial motion and motion to dismiss), Judges.


Nicolas Heims appeals his criminal convictions. **AFFIRMED.**


Mark C. Meyer, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


Considered by Greer, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

From evidence introduced at Nicolas Heims's second criminal trial, we glean the following facts. Heims pursued a romantic relationship with a coworker, but she generally rebuffed him. Eventually, she agreed to cook him dinner at her house. Not long after that meal, Heims showed up at the coworker's house claiming he needed a place to stay. The coworker kindly permitted Heims to stay, but only for a few days. But Heims didn't leave. He refused to sign a lease or submit to a background check as the coworker requested, and he began to ignore rules she had set for his stay. The coworker testified that, during the several months from when Heims moved in until she was able to evict him, Heims sexually assaulted her four separate times, destroyed her property in her house, and harassed her.

Heims's conduct led to the State originally charging him with nine crimes. The State later moved to amend the trial information to charge a tenth crime. Heims did not resist the motion, and the motion was granted, resulting in these ten charges:

| Count | Charge | Level of Crime |
|-------|--------|----------------|
| I | Sexual abuse in the third degree | Class "C" felony |
| II | Sexual abuse in the third degree | Class "C" felony |
| III | Sexual abuse in the third degree | Class "C" felony |
| IV | Sexual abuse in the third degree | Class "C" felony |
| V | Harassment in the first degree | Aggravated misdemeanor |
| VI | Domestic abuse assault by strangulation | Class "D" felony |
| VII | Domestic abuse assault while displaying a dangerous weapon | Aggravated misdemeanor |
| VIII | Domestic abuse assault causing bodily injury | Serious misdemeanor |
| IX | Willful injury causing bodily injury | Class "D" felony |
| X | Criminal mischief in the first degree | Class "C" felony |

The case proceeded to a jury trial on the ten charges. On a defense motion, the trial ended in a mistrial after a witness mentioned a topic that the parties had agreed would be off limits.

Before the case was brought to trial a second time, the State moved to amend the trial information a second time to raise the charge in count I from sexual abuse in the third degree to sexual abuse in the second degree and to add an eleventh charge of theft in the first degree. Heims resisted this motion, and, for the first time, he raised an objection to the first amendment. The district court ultimately denied the motion seeking a second amendment but denied Heims's challenge to the first amendment. As a result of these rulings, Heims was set to face the same charges on retrial as he had prior to the mistrial. Before the second trial, Heims waived his right to a jury trial and agreed to a bench trial. Also, two days before the second trial, he moved to dismiss all charges against him on double jeopardy grounds.

The case proceeded to a bench trial. During the trial, the district court granted Heims's motion for judgment of acquittal as to any assault charge that had a domestic-abuse component, finding the State failed to prove that Heims and the coworker were in a domestic relationship. *See* Iowa Code § 708.2A(1) (2021) (defining "domestic abuse assault" as an assault that is "domestic abuse" as defined in section 236.2(2)(a)–(d)); *see also id.* § 236.2(2) (defining "domestic abuse"). The district court reached the following verdicts on the charges:

| Count | Original Charge | Verdict |
|-------|-----------------|---------|
| I | Sexual abuse in the third degree | Guilty as charged |
| II | Sexual abuse in the third degree | Not guilty |
| III | Sexual abuse in the third degree | Not guilty |

| IV | Sexual abuse in the third degree | Not guilty |
|---|---|---|
| V | Harassment in the first degree | Guilty of lesser charge of harassment in the third degree |
| VI | Domestic abuse assault by strangulation | Guilty of lesser charge of assault causing bodily injury |
| VII | Domestic abuse assault while displaying a dangerous weapon | Not guilty |
| VIII | Domestic abuse assault causing bodily injury | Guilty of lesser charge of assault |
| IX | Willful injury causing bodily injury | Guilty as charged |
| X | Criminal mischief in the first degree | Guilty of lesser charge of criminal mischief in the fourth degree |

Prior to sentencing, the judge who presided over the first trial held a hearing on Heims's motion to dismiss and denied it. Heims also filed a motion for new trial related to the second trial, contending his convictions were not supported by the weight of the evidence. The judge who presided over the second trial held a hearing on the motion, denied it, and sentenced Heims. The court merged counts VI and IX for purposes of sentencing and sentenced Heims to a combination of concurrent and consecutive sentences that resulted in a prison term not to exceed sixteen years.

Heims appeals. He contends: (1) the Double Jeopardy Clauses of the United States and Iowa Constitutions barred his retrial after a mistrial was declared; (2) the district court erred in allowing the State to amend the trial information to add the criminal-mischief charge; (3) insufficient evidence supports his conviction for criminal mischief; and (4) the district court erred by not granting his motion for new trial because the weight of the evidence does not support his convictions for sexual abuse in the third degree, assault causing bodily injury, and willful injury causing bodily injury.

**I.     Double Jeopardy**

To set the stage for Heims's double-jeopardy claim, we provide additional background beginning with a pretrial agreement made before the first trial.  As the first trial was set to begin, Heims had pending charges in a different case alleging he had assaulted another woman.  The parties here agreed that evidence about Heims's alleged assault of the other woman or the charges against him related to it would not be presented because it would be unfairly prejudicial.  The pretrial agreement did not prohibit all references to the other woman.

During the trial, the prosecutor mentioned the other woman in her opening statement and when questioning Heims's coworker (the complaining witness against him), but those references were within the confines of the pretrial agreement.  As the coworker was questioned about Heims sexually assaulting her, she began to testify in a manner that would potentially violate the pretrial agreement, but the prosecutor promptly cut her off and steered her away from the forbidden topic.  The give-and-take of the questioning that followed shows that the coworker tended to stray off topic during her testimony despite the prosecutor's efforts to keep her on topic.  Eventually, after the coworker made various nonresponsive comments about Heims telling her his belief that he would be incarcerated for his past actions, the prosecutor tried to steer her toward the topic of Heims grabbing her cell phone.  In response, the coworker testified to Heims grabbing her phone, going through it, and throwing it across the room, but then, unprompted, added:

> After he got up from doing whatever he was doing to me and talking
> about [the other woman], what he did to her, when he found out, like

he went crazier.  He goes, Bitch, I will kill you.  I will kill you tonight.  So if you get out from this room, you're going to pay the consequences.

Without prompting from the attorneys, the court called the attorneys to the bench to discuss the coworker's testimony, as the court believed she had touched on a discussion of the other woman that was prohibited by the pretrial agreement.  Defense counsel expressed concern that the statement, in conjunction with other references to the other woman and going to prison, would be unfairly prejudicial to Heims and asked for a mistrial and dismissal.  Heims's counsel then acknowledged, "I'm not blaming [the prosecutor].  She didn't ask the question . . . ."  The prosecutor argued that a mistrial was unwarranted.  She added, "I have talked with the witness, you know, and I've indicated to her what we had agreed to.  She's just very emotional at this point in time . . . .  [A]nd I can talk with her further about that issue."  The court granted the mistrial.

Two days before the second trial, Heims moved to dismiss the charges.  In direct conflict with the concession made at the first trial that the prosecutor was not to blame for the coworker's comments that led to the mistrial, Heims's counsel argued dismissal was required because the prosecutor intentionally goaded him into moving for a mistrial.  The court rejected Heims's argument and denied the motion, finding retrial would not violate Heims's double-jeopardy rights.

With this history as our backdrop, we address Heims's claim that his motion to dismiss should have been granted on double-jeopardy grounds.

Because double jeopardy is a constitutional issue, our review is de novo.  *State v. Goodson*, 958 N.W.2d 791, 798 (Iowa 2021).  Both the United States and

Iowa Constitutions prohibit retrial for the same offense.[1] U.S. Const. amend. V; Iowa Const. art I, § 12. When a defendant moves for a mistrial, the defendant may generally be tried again without offending the Double Jeopardy Clause. *State v. Swartz*, 541 N.W.2d 533, 537 (Iowa Ct. App. 1995). But when a prosecutor, through misconduct, intends to goad the defendant into moving for a mistrial, the Double Jeopardy Clause bars retrial. *State v. Rademacher*, 433 N.W.2d 754, 757 (Iowa 1988).

In ruling on Heims's motion, the same judge who presided over the first trial, and personally observed the testimony that led to the mistrial, determined that the prosecutor did not intend to goad Heims to move for a mistrial. While we note that the district court is in the best position to determine the prosecutor's intent, *see id.* at 759, upon our de novo review, we agree that the prosecutor did not purposefully elicit the offending testimony hoping to cause a mistrial. The prosecutor did not ask questions that naturally led to the coworker's testimony about Heims going to prison or doing something to the other woman. Rather, the coworker spontaneously volunteered that information despite having been told beforehand to avoid those topics. On at least one occasion when the prosecutor sensed that the testimony was veering into restricted territory, she cut the coworker off and redirected her. And our sense that the offending statements were the product of

---

[1] The United States Constitution's Double Jeopardy Clause is more expansive than the Iowa Constitution's. *State v. Velez*, 829 N.W.2d 572, 584 (Iowa 2013) ("Iowa's double jeopardy clause is distinct from the Federal Double Jeopardy Clause, merely requiring that 'no person shall after acquittal, be tried for the same offense.'"). Heims does not argue that the Iowa Constitution affords him any more rights or protections than the United States Constitution does, so we do not distinguish them.

an emotional witness rather than any nefarious conduct by the prosecutor is supported by the fact that defense counsel acknowledged during trial that the coworker's volunteered statements were not the prosecutor's fault or the result of the questions asked.

On our de novo review, we find that the prosecutor did not intend to cause Heims to move for a mistrial. The district court properly denied Heims's motion to dismiss the charges.

## II.      Amendment of Trial Information

Heims next claims the district court erred by allowing the State to amend the trial information to add count X. Count X charged criminal mischief, which Heims argues is a wholly new and different offense that cannot be added to the original trial information. *See* Iowa R. Crim. P. 2.4(8)(a)[2] ("Amendment is not allowed . . . if a wholly new and different offense is charged."). Whether the trial information charged a wholly new and different offense is a question of law, so we review for correction of legal error. *State v. Allen*, 965 N.W.2d 909, 911 (Iowa 2021). However, even conceding the amendment added a wholly new and different offense, we find Heims waived his objection to the amendment.

The State moved to amend the trial information to add count X over one and a half months prior to the first trial. Heims did not resist the motion and went to trial the first time without objection. As noted, the first trial ended in a mistrial. It was only as the second trial approached and after the State moved to amend the

---

[2] Throughout this opinion, we cite to the version and numbering of the Iowa Rules of Criminal Procedure in effect in 2022, when Heims's case was tried. The rules were amended in 2023, which changed the numbering of the applicable rules.

trial information a second time—a motion that was ultimately denied in a ruling that is not a subject of this appeal—that Heims lodged an objection to the first amendment. The court denied Heims's challenge to the first amendment, finding he had waived any objection to it.

We agree with the district court that Heims waived his objection to the amendment adding count X. As Heims's objection is to the initiation of the criminal-mischief charge, our rules of criminal procedure required him to raise the objection before trial. *See* Iowa Rs. Crim. P. 2.11(2)(a), 2.34(2) (adopting applicable rules of civil procedure for motions in criminal cases); Iowa R. Civ. P. 1.431(4) (imposing a ten-day deadline to resist motions). But Heims raised no objection, thereby waiving it. *See* Iowa R. Crim P. 2.11(3) ("Failure of the defendant to timely raise . . . objections . . . which must be made prior to trial under this rule shall constitute waiver thereof."). Heims contends that the mistrial during his first trial somehow revoked his waiver, but he cites no persuasive authority to support this claim. He suggests that the resetting of the speedy-trial clock to ninety days following the mistrial, *see State v. Zaehringer*, 306 N.W.2d 792, 794–95 (Iowa 1981) (holding a retrial following a mistrial must be tried within ninety days of the mistrial), resets other deadlines as well. But he provides no convincing explanation for why resetting the speedy-trial clock would somehow reset the deadline to object to amendment of the trial information. It makes sense that deadlines related to the start of a second trial, like the speedy-trial deadline, are reset after a mistrial. It makes little or no sense that deadlines that have nothing to do with the start of a second trial following a mistrial would need to be reset.

The deadline Heims seeks to reset is of the second type. Finding no basis in our rules or in logic to reset such a deadline, we reject Heims's contention that his deadline for objecting to amendment of the trial information was reset following the mistrial.

Heims also suggests that he was not required to object to the proposed amendment and the court had a responsibility to deny the motion regardless of his silence. We note that two of the three cases Heims relies on to support this contention can be easily distinguished from this situation, because they involve rulings granting amendment over the defendant's objection. *See State v. Allen*, 965 N.W.2d 909, 910 (Iowa 2021); *State v. Vandermark*, 965 N.W.2d 888, 890 (Iowa 2021). In both cases, our supreme court held that a district court must deny an amendment when the new count alleges a wholly new and different offense in the circumstance where the defendant had objected to the amendment. *Allen*, 965 N.W.2d at 911; *Vandermark*, 965 N.W.2d at 892. The third case Heims raises does not address whether the defendant objected, and thus cannot be read to mean that no matter if a defendant makes a timely objection, the court must deny the amendment. *See State v. Sharpe*, 304 N.W.2d 220, 222–25 (Iowa 1981).

Our court has addressed an issue related to Heims's claim that the court had the obligation to deny the amendment despite his lack of objection in the context of postconviction relief. In *Meyers v. State*, we recognized that it can be a strategic benefit to the defendant to not object to the amendment of the trial information to avoid downsides that might come from the State filing a new trial information. No. 22-0935, 2023 WL 4529440, at *2 (Iowa Ct. App. July 13, 2023).

The State points out, and we agree, that requiring courts to deny improper amendments in the face of the defendant's acquiescence would deprive the defendant of that strategic choice. In *Meyers*, we declined to take that choice away from defendants by recognizing that defense counsel did not breach an essential duty by failing to object to amendment of a trial information. *Id.* We build on the holding in *Meyers* and hold that the district court is not required to deny an amendment to a trial information when the defendant does not object.

For the reasons stated, Heims waived his objection to the amendment of the trial information to add count X, and the district court did not err in denying Heims's untimely objection to the amendment.

## III. Sufficiency of the Evidence

Heims next claims the evidence was insufficient to support his conviction for criminal mischief in the fourth degree. We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Hall*, 969 N.W.2d 299, 304 (Iowa 2022). We uphold the verdict if it is supported by substantial evidence. *Id.*

The State bears the burden of proving each element of the offense beyond a reasonable doubt. *State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022). One element the State was required to prove here is that Heims intentionally "damaged, defaced, altered, or destroyed" property and had no right to do so. *See* Iowa Code § 716.1. While the State claimed Heims damaged numerous items of his coworker's property, the district court found the State proved only a small fraction of its claims. Specifically, the court found that the only property the State proved Heims damaged was a four-piece pot deep soup set, a stainless steel twenty-four-

quart pot, a stock pot, and a three-piece stainless steel cookware set, which the State proved Heims threw into the slough across the street from the coworker's house. Because these are the only items of property for which the court found Heims guilty, we limit our discussion to those items. Heims argues the evidence does not establish that the items were damaged, defaced, altered, or destroyed.

We start our analysis of this issue by noting that the terms "damage," "deface," alter," and "destroy" are not defined in Iowa Code chapter 716. So "we look to precedent, similar statutes, dictionaries, and common usage to define the term[s]." *State v. Slaughter*, 3 N.W.3d 540, 548 (Iowa 2024) (citation omitted). Unfortunately, precedent and similar statutes provide little guidance, so we turn to the dictionary, which yields these definitions of the terms:

- "Damage" means to cause "loss or harm resulting from injury to person, property, or reputation", *Damage*, Merriam-Webster, http://www.meriam-webster.com/dictionary/damage (last visited Apr. 10, 2024),

- "Deface" means "to mar the appearance of" or "injure by effacing significant details", *Deface*, Merriam-Webster, http://www.meriam-webster.com/dictionary/deface (last visited Apr. 10, 2024),

- "Alter" means "to make different without changing into something else", *Alter*, Merriam-Webster, http://www.meriam-webster.com/dictionary/alter (last visited Apr. 10, 2024),

- "Destroy" means "to ruin the structure, organic existence, or condition of." *Destroy*, Merriam-Webster, http://www.meriam-webster.com/dictionary/de story (last visited Apr. 10, 2024).

In an effort to meet its burden of proof, besides evidence that Heims threw the cookware in the slough and admitted doing so to a witness, the State presented photos of the cookware in the water of the slough, where they had been tossed by Heims and where they remained for several months. The photos show the

cookware partially or wholly submerged in filthy water. The outsides of the pots show signs of tarnish, and there is clearly dirt and grime filling the insides:



Heims contends that the State's evidence failed to establish the cookware was damaged, defaced, or destroyed because the items were found and "remained intact." But the fact that the cookware was not destroyed does not insulate Heims from criminal liability. Destruction is just one way to commit criminal mischief. *See* Iowa Code § 716.1. Damaging, defacing, or altering property also falls within the scope of the criminal-mischief statute. *Id.* Besides the fact that damage, deface, and alter, by definition, do not require destruction, we also note that the amount-of-damage element of the crime can be met by proof of "[t]he cost of replacing, repairing, or restoring the property."[3] *See id.* §§ 716.3(1)(a), .4(1)(a), .5(1)(a), .6(1)(a)(1). This suggests that intentional damage to property still

---

[3] Heims challenges only the finding that the property was damaged, defaced, altered, or destroyed, not the cost of replacing, repairing, or restoring the property. So we do not consider him to be challenging the degree of criminal mischief.

constitutes the crime of criminal mischief even though the property can be repaired or restored.

A reasonable fact finder could conclude that the winter spent in the muck of the slough damaged, defaced, or altered the cookware, as they were in a condition that required replacement, repair, or restoration. As a result, substantial evidence supports the district court's finding that Heims committed the crime of criminal mischief.

## IV. Weight of the Evidence

Heims's final challenge is to the court's denial of his motion for new trial. In that motion, Heims asserted that the verdicts finding him guilty of sexual abuse in the third degree (Count I), assault causing bodily injury (Count VI), and willful injury causing bodily injury (Count IX) were against the weight of the evidence, so the court should have granted him a new trial.[4]

The district court is permitted to grant a new trial when the verdict is contrary to the evidence. Iowa R. Crim. P. 2.24(2)(b)(6). The phrase "contrary to evidence" in the rule means "contrary to the weight of the evidence." *State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022) (citation omitted). "The purpose of granting a new trial" on this ground "is to avoid a miscarriage of justice in which the evidence preponderates heavily against the verdict." *Id.* Granting a new trial on this ground is reserved for situations when "critical evidence has been ignored in the fact-

---

[4] As previously noted, the court merged count VI and count IX. *See* Iowa Code § 701.9. Further, we note that, while Heims arguably raised a weight-of-the-evidence challenge to additional charges in his motion for new trial, on appeal, he limits his challenge to the three charges listed, so we confine our discussion to those charges.

finding process," and it should only be used in exceptional circumstances. *Id.* On appellate review, we do not make our own determination of whether the verdict is contrary to the weight of the evidence; instead, we decide only whether the district court abused its discretion in denying the motion. *Id.* The district court has considerable discretion in making the assessment of the weight of the evidence, and we are deferential to that discretion by reversing only when there is a "clear and manifest abuse of discretion." *Id.* (quoting *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013)).

### A. Sexual Abuse

As to the charge of sexual abuse in the third degree, Heims argues the court should not have found his coworker credible, so the weight of the evidence preponderates heavily against the guilty verdict. We find no abuse of discretion in the court's denial of the new-trial motion on this count. Not only did the court find the coworker credible when she testified that Heims forcibly raped her, but her testimony is supported by other evidence. That additional support includes evidence that she fled from the house only minimally clothed the night of the assault, hid under vehicles along her flight route, found neighbors to ask for help, called the police and reported the assault, and went to the hospital where photos of bruising on her thighs, chest, and neck were taken. The State also presented testimony from an inmate at the jail where Heims was held pretrial who testified that Heims admitted strangling the coworker, hitting her chest, and tying her up— all details the coworker provided in her testimony.

Heims's own testimony also provided context explaining why he would have been motivated to assault his coworker. He claimed the two were in a relationship and had been arguing because he believed she was texting another man. Throughout his testimony he demonstrated instances of jealous and controlling behavior. The district court found this need for control helped explain why he assaulted the coworker. *See State v. Montgomery*, 966 N.W.2d 641, 651 (Iowa 2021) ("[S]ome sexual abuse is performed to exert power or control over the victim.").

Heims also supports his challenge by pointing out that the district court found him not guilty on the other three charges of sexual abuse, he believes the coworker's reports of the incident were inconsistent, and the coworker did not support a harsh sentence. He contends these details show the guilty verdict for sexual abuse was against the weight of the evidence.

To the extent the district court finding Heims not guilty of the other three counts of sexual abuse indicates that the court did not find her credible on the other three counts—a dubious assumption—it does not undermine the court finding her credible regarding the count for which the court found Heims guilty. A fact finder is entitled to believe all, part, or none of any witness's testimony. *See State v. Shorter*, 945 N.W.2d 1, 10 (Iowa 2020) ("[T]he jury can believe some of a witness's story while rejecting other parts."); *see also* Iowa Crim. Jury Instructions 100.7. It is clear the court found the coworker credible regarding the events that led to the guilty verdicts, so the court did not abuse its discretion in finding the verdict was not contrary to the weight of the evidence.

As for Heims's claim of inconsistencies in his coworker's recital of the facts, he contends the court ignored the fact that she did not initially report the sexual nature of the assault. But the district court noted the coworker's delayed reporting and her explanation that she was scared to share the fact of the sexual assault because she feared what Heims might do to her or her daughter. Contrary to Heims's suggestion, this evidence wasn't ignored. *See State v. Grant*, 722 N.W.2d 645, 648–49 (Iowa 2006) ("The granting of a new trial based on the conclusion that a verdict is against the weight of the evidence is reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process."). And the court was entitled to believe her testimony despite prior inconsistencies, especially considering the court found she was mostly consistent regarding her accounts of this assault. *See, e.g.*, *State v. Moss*, 21-1301, 2023 WL 152480, *7–8 (Iowa Ct. App. Jan. 11, 2023) (affirming conviction when the victim's inconsistencies were not material and the court found the victim credible).

As to his final point that the coworker supported a lighter term of incarceration, we do not see how that undermines the weight of the evidence supporting the conviction. The fact that the coworker expressed compassion such that she did not want Heims to spend a long time in prison is not evidence that Heims did not commit the crime.

The district court did not abuse its discretion in denying Heims's motion for a new trial on the sexual-abuse charge (count I).

### B.  Assault and Willful Injury Causing Bodily Injury

As to his claim that the guilty verdicts for assault causing bodily injury (count VI) and willful injury causing bodily injury (count IX) were contrary to the weight of the evidence, Heims relies on the recording of his coworker's interview with the police several days after the incident during which she discusses her bruises.  Heims claims she admits that all her bruising was caused by her flight from the house not from Heims.  First, we note that, even if the bruises were caused by the coworker's flight from the house, the flight was in response to Heims sexually assaulting her.  Second, this claimed inconsistency does not cause the evidence to preponderate heavily against the guilty verdicts when the State presented evidence of her injuries, credible testimony from the coworker about what happened, and corroborating testimony from the inmate at the jail.  The district court did not abuse its discretion in denying Heims's motion for a new trial on these two charges.

### V.  Other Filings

Even though Heims is represented by counsel, he has filed multiple documents with our court purporting to be briefs and motions.  We have already issued orders addressing some of those filings, including denying Heims's request for new counsel and explaining that we cannot consider his other filings because Iowa Code section 814.6A(1) prohibits us from doing so.  Following the filing of those orders, Heims has filed another document.  As with the others, we take no action on such filing based on the directives in section 814.6A(1).

**VI.    Conclusion**

Heims's retrial did not violate his double-jeopardy rights.  As Heims waived any objection to amending the trial information to add a count for criminal mischief, the district court did not err by denying Heims's belated objection to the amendment.  And sufficient evidence supports Heims's conviction for criminal mischief.  Finally, the district court did not abuse its discretion in denying Heims's motion for new trial after determining that the guilty verdicts were not against the weight of the evidence.  Therefore, we affirm.

**AFFIRMED.**