IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | ID No. 1005008059A |
| v. | : | In and For Kent County |
| | : | |
| ISAIAH MCCOY, | : | |
| | : | |
| Defendant. | : | |

*Submitted: November 21, 2016*
*Decided: December 14, 2016*

*Upon Consideration of Defendant's*
*Motion to Dismiss*
DENIED

**ORDER**

Gregory R. Babowal, Esquire, and Stephen E. Smith, Esquire, Deputy Attorneys General, Department of Justice, Dover, Delaware for the State of Delaware.

Herbert W. Mondros, Margolis Edelstein, Wilmington, Delaware and *Pro Hac Vice* Michael Wiseman, Esquire, Philadelphia, Pennsylvania for Defendant.

Young, J.

*State v. McCoy*
ID No.: 1005008059A
December 14, 2016

## SUMMARY

Defendant moves to dismiss the State's case. He argues that this Court should dismiss this case on Double Jeopardy grounds since the State, during its initial trial, acted with the intent to goad Defendant into moving for a mistrial. He further argues that, though this Court did not originally rule that there was a mistrial, the Delaware Supreme Court reversed his prior conviction on grounds that this Court should have ruled that there was a mistrial. Defendant then concludes that, since he is before this Court for a second time as a result of the State's misconduct, and since the State acted with an intent to goad him into moving for a mistrial that should have been granted, Double Jeopardy bars this retrial. Defendant has not shown that the State at his first trial intended to goad him into moving for a mistrial. Therefore, Defendant's motion is **DENIED**.

## FACTS AND PROCEDURES

Defendant was indicted on eight charges on July 6, 2010. Those charges included First Degree Murder intentionally causing the death of another person, First Degree Murder recklessly causing the death of another person while engaged in the commission of or the attempt to commit Robbery First Degree, Possession of a Firearm During the Commission of a Felony (Murder First Degree), First Degree Robbery, Possession of a Firearm During the Commission of a Felony (Robbery First Degree), Second Degree Conspiracy, Motor Vehicle Theft.[1] Defendant represented himself at his trial on May 29, 2012. Having been convicted of Murder in the First

---

[1] *McCoy v. State*, 112 A.3d 239, 244 (Del. Jan. 20, 2015).

2

Degree, among other offenses, the penalty phase of Defendant's trial started on July 3, 2012.[2]

During Defendant's trial, the veteran prosecutor engaged in conduct that led to a reprimand from the trial court judge.[3] The prosecutor, in front of the jury, vouched for a witness, suggesting Defendant's guilt.[4] Defendant objected to this conduct, but did not move for mistrial immediately after lodging his objection. Further, in response to testimony by the Defendant that the State did not recount a prior witness' testimony correctly, the prosecutor noted "it is the jury's recollection that counts."[5] During cross examination of the Defendant the prosecutor said "you had all night to think that up? . . . All night to think about how to respond and rehabilitate your answers from yesterday, didn't you?"[6] The State repeatedly objected to standby counsel's involvement during trial.[7] On another occasion, outside of the jury's presence, the prosecutor stated with respect to the Defendant "I don't care. You

---

[2] *Id.* at 244.

[3] *Id.* at 265.

[4] *Id.* at 258 ("Objection, Your Honor. Again, this witness has testified she didn't even know the guy. She hasn't seen him. She didn't talk to him. She obviously hasn't spoken to the defendant since he shot her boyfriend. How would she know anything about Deshaun White; what he said to anybody").

[5] *Id.* at 263.

[6] *Id.*

[7] *Id.* at 263-64.

can dress him up. He's still a murderer."[8]

On June 25, 2012, when Defendant attempted to introduce evidence that the trial judge ruled was hearsay after the trial judge's ruling, the State did not move for mistrial. It noted "that's one of the most blatant disregards of the Court's ruling I've ever heard in the almost 25 years I have been at the Bar . . . . If the State tried to do that [h]e'd be moving for mistrial, and quite frankly, if we weren't five weeks into this case, I would ask for a mistrial."[9]

After the guilt phase of the trial, the State threatened the safety of the Defendant on July 5, 2012. He did so by noting that he would make sure that it was public knowledge that Defendant "snitched" in this case, and that people in prison would create problems for Defendant once they found out that he "snitched."[10]

Defendant did move for a mistrial at one point during trial.[11] That motion was denied. At the close of the State's case, Defendant moved for acquittal, and the Court reserved judgment.[12] Ultimately, the jury found Defendant guilty of six charges, including murder, as mentioned.[13] Before the penalty phase of his trial, Defendant

---

[8] *Id.* at 265.

[9] Trial Transcript, *State v. McCoy*, 2012 WL 5552033 (Del. Super. June 25, 2012).

[10] Favata, 119 A.3d at 1287-88.

[11] The Defendant's only motion for mistrial was made on June 5, 2012. Defendant felt a tape should have been admitted into evidence and moved for a mistrial when the trial court judge refused to do so.

[12] *McCoy*, 112 A.3d at 248.

[13] *Id.* at 244.

4

moved for a new trial and an acquittal on four grounds: 1) that there was no physical evidence linking him to the crimes for which he was convicted; 2) that the State's case rested solely on the testimony of two witnesses; 3) that the testimony of those two witnesses was hearsay; and 4) that the testimony of those two witnesses was contradicted by other evidence in the case.[14] The Court denied those motions.[15]

Defendant appealed the verdict to the Delaware Supreme Court. On January 20, 2015, that Court reversed and remanded this Court's decision, because the State improperly vouched for its position[16] and the trial judge improperly interfered with Defendant's peremptory challenges during jury selection.[17]

## DISCUSSION

The Double Jeopardy provisions of the federal and state constitutions do not prevent retrying Defendant. The Fifth Amendment to the United States Constitution reads: "no person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb."[18] Likewise, the Delaware Constitution reads "no person shall be for the same offense twice put in jeopardy of life or limb."[19] Courts interpret the United

---

[14] *Id.* at 249.

[15] *Id.*

[16] *Id.* at 262.

[17] *Id.* at 257-58.

[18] U.S. Const. Amend. V.

[19] Del. Const. Art. I. § 8.

States and Delaware double jeopardy provisions identically.[20] Under both constitutions, if a defendant moves for a mistrial, and the Court grants that mistrial motion, then the defendant is subject to a retrial unless the court or a prosecutor intended to goad defendant into making the motion.[21] Delaware law is silent as to whether this same rule applies when the trial court erroneously fails to grant a mistrial motion that a prosecutor intended to goad a defendant into making.

## I. *Oregon v. Kennedy* Invokes Double Jeopardy Where the Prosecutor Intends to Goad Defendant

The Double Jeopardy Clause provides, in part, that there should be no difference between the way courts treat acquittals or, on the other hand, reversals for insufficient evidence. Generally, the Double Jeopardy Clause does not apply to cases reversed on appeal. Disallowing retrials would negatively impact a defendant's appeal rights, by discouraging reversals, and would infringe too much upon society's interest in addressing one who may be found guilty after a fair trial.[22] One situation in which the Double Jeopardy Clause does bar the retrial of a defendant who successfully appeals a conviction is where the reversal is based upon the insufficiency of the evidence presented to the trial court.[23] In *Burks v. United States*, the Court noted that a reversal for insufficiency of evidence is the same as an acquittal, in that it means

---

[20] *Bailey v. State*, 521 A.2d 1069, 1075 (Del. Mar. 3, 1987).

[21] *Oregon v. Kennedy*, 456 U.S. 667, 676 (May 24, 1982).

[22] *United States v. Tateo*, 377 U.S. 463, 466 (June 8, 1964).

[23] *Burks v. United States*, 437 U.S. 1, 15-18.

that there was so little proof regarding the State's case that the case should have never gone to the jury.[24] It concluded that if, in the instance of an acquittal by a jury, the Court cannot retry the defendant, there is no reason why society's interests would be such that a court could retry a defendant after a reversal on appeal for lack of sufficient evidence.[25]

Mistrials declared under *Kennedy's* "intent to goad standard" resemble acquittals and reversals of verdicts due to a lack of evidence. If, under the *Kennedy* analysis, a prosecutor intends to goad a defendant into a motion for a mistrial, it is implied that the evidence before the jury is insufficient to avoid acquittal. This assertion is supported by the court in *United States v. Wallach*. In *Wallach*, the Second Circuit Court of Appeals held that the Double Jeopardy Clause barred retrial in instances of "prosecutorial misconduct done in order to prevent an acquittal the prosecutor believed at the time was likely to occur in the absence of his misconduct."[26] In reaching this conclusion, the court stated that "the prosecutor who acts with the intention of goading the defendant into making a mistrial motion presumably does so because he believes that completion of the trial will likely result in an acquittal."[27] This similarity is further demonstrated by the fact that a court may

---

[24] *Id.*

[25] *Id.* Another way to state the rational for this exception is that while society maintains a high interest in ensuring the guilty are punished in situations where a court reverses a verdict due to trial error, this interest is overtaken by the defendant's interest in fair adjudication in situations where an appellate court reverses a verdict because of a lack of evidence. *Id.*

[26] *United States v. Wallach*, 979 F.2d 912, 916 (2nd Cir. Nov. 9, 1992).

[27] *Id.*

consider how the trial is going in determining whether a prosecutor intended to goad a defendant into moving for a mistrial.[28] If a prosecutor was likely to win a case, then he has no reason to cause a mistrial intentionally.[29] On the other hand, if a prosecutor is likely to lose a case, then it is more likely that the prosecutor intended to cause a mistrial with his misconduct.[30] Since actions done with an intent to goad, acquittals, and reversals due to lack of evidence are effectively comparable, they should all be treated similarly under the Double Jeopardy Clause.

Though some courts have disagreed,[31] other courts have taken steps toward applying the Double Jeopardy Clause to appeals for misconduct similar to reversals on appeal due to insufficient evidence and acquittals. As noted above, the Second Circuit Court of Appeals has taken that position in *Wallach*.[32] In *State v. Colton*, the

---

[28] *United States v. Hagege*, 437 F.3d 943, 953 (9th Cir. Feb. 22, 2006).

[29] *Id.*

[30] *Id.*

[31] See *Beringer v. Sheahan*, 934 F.2d 110, 112-13 (7th Cir. May 31, 1991) (holding that defendant must make a motion for mistrial in order to avoid retrial under Double Jeopardy Clause due to prosecutorial misconduct, because if a defendant has not moved for a mistrial then he has succeeded in maintaining control over trial). However, with an issue of double jeopardy doctrine, courts should not confuse choice and control. *United States v. Dinitz*, 424 U.S. 600, 608-09 (Mar. 8, 1976). Nevertheless, *Beringer* uses the verbs to choose and to control interchangeably. *Beringer*, 934 F.2d at 112-13. A defendant will always have the choice over whether to file a mistrial motion. *Kennedy* focuses on remedying a loss of control inherent in situations where the prosecutor intends to goad defendant into a mistrial motion. Simply because a defendant chooses to take his chances with the jury does not mean that control has not already been all but lost.

[32] *Wallach*, 979 F.2d at 916.

Connecticut Supreme Court followed the Second Circuit's lead in extending *Wallach* to Connecticut state law.[33] Additionally, Connecticut and Rhode Island have interpreted the Double Jeopardy Clause of the United States Constitution to bar retrials in instances where the trial court erroneously decided not to grant a defendant's motion for mistrial for prosecutorial misconduct intended to goad the defendant into moving for a mistrial.[34]

Assuming for these purposes the latter view, the issue would then turn on the existence of prosecutorial misconduct intending to goad the defendant into moving for a mistrial.

## II. The Prosecutor in this Case Did Not Intend to Goad the Defendant into Moving for a Mistrial

The State's first argument against barring retrial is that the only prosecutorial misconduct this court should consider, in determining whether there was an intent to goad, is that for which the defendant could obtain a reversal in the first instance. In other words, in this case, this Court should consider only that misconduct done in front of a jury, and for which the Delaware Supreme Court reversed the initial decision. On that basis, the State asserts that the conduct does not rise to the level of misconduct, which the Supreme Court of the United States determined constituted an intent to goad in *Kennedy*. The State's second argument against barring retrial is that the original prosecutor did not intend to goad the Defendant into moving for a

---

[33] *State v. Colton*, 663 A.2d 339, 346 (Conn. Aug. 8, 1995).

[34] *State v. Butler*, 810 A.2d 791, 795 n. 5 (Conn. Dec. 17, 2002); *State v. Diaz*, 521 A.2d 129, 131-33 (R.I. Feb. 24 1987).

mistrial, even if this Court considers all of the conduct. The State's second argument succeeds because, after inferring the existence or nonexistence of intent from objective facts and circumstances, this Court finds that the original prosecutor did not intend to goad Defendant into moving for a mistrial.

### A. This Court May Consider Misconduct for which the Initial Case Could Not Be or Was Not Reversed

In applying *Kennedy*, courts have considered misconduct for which a defendant would likely not get a mistrial or reversal on appeal in the first instance. They have also considered conduct for which the decision to grant a mistrial motion or reverse a verdict was not made. Thus, this court may consider misconduct for which the initial case could not be or was not reversed.

Courts have considered misconduct for which a defendant would likely not get a mistrial or reversal on appeal in the first instance. In *Butler v. State* a trial Court held a conference without a court reporter after the parties had been assured that the conference was only about scheduling; but nevertheless put pressure on the parties to resolve the case by a plea during that conference, gave the parties a sporadic trial schedule after finding out that there would be no plea, gave the jury additional voir dire that included more than just scheduling concerns, did the voir dire without the parties' consent, excused a juror only because he had hearing issues, told the parties in an off record meeting that so many jurors would be excused that there would no longer be any alternates, raised the possibility of a mistrial off of the record, threatened that jeopardy would attach if there were a mistrial, and suggested again

that the case should be pled.[35] The defendant moved for a mistrial that was granted.[36] The Court held that retrial was barred by the Double Jeopardy Clause since the trial judge intended to goad defendant into moving for a mistrial.[37] It reasoned that, in total, all of the trial judge's conduct, including that conduct which did not take place in front of jurors, and that conduct that on its own would likely not cause a mistrial, could support an inference that the judge intended to goad the defendant into moving for a mistrial.[38]

In deciding whether a prosecutor intended to goad a defendant into moving for a mistrial, Courts can also consider conduct for which the decision to grant a mistrial motion or reverse a verdict was not made. In *Commonwealth v. Smith*, while declining to bar retrial under the federal Double Jeopardy Clause but barring retrial under the state Double Jeopardy Clause, the Pennsylvania Supreme Court considered evidence of prosecutorial misconduct during the original trial, that arose years after the defendant's appeal reversed the original verdict.[39]

As the cases above indicate, courts have considered misconduct for which a mistrial or reversal could not have been or was not granted in applying the *Kennedy* analysis. Thus, this Court will consider misconduct for which a mistrial or reversal

---

[35] *Butler v. State*, 95 A.3d 21, 38 (Del. June 24, 2014).

[36] *Id.* at 31.

[37] *Id.* at 37.

[38] *Id.*

[39] *Commonwealth v. Smith*, 615 A.2d 321, 322-23 (Pa. Sept. 18, 1992).

11

could not have been and/or was not granted.

**B.** **The Prosecutor in this Case Did Not Intend to Goad Defendant into Moving for a Mistrial**

In determining whether the prosecutor acted with an intent to goad the defendant into moving for mistrial, courts must make a finding of fact by inferring the existence or nonexistence of intent from objective facts and circumstances.[40] Some of the factors that other courts have used in determining whether a prosecutor intended to goad a defendant into moving for mistrial include whether there was no sequence of overreaching prior to the misconduct,[41] whether the prosecutor or judge resisted and was surprised by the mistrial motion,[42] whether the case was going well for the prosecutor at the time of the misconduct,[43] and the prosecutor's level of experience.[44] "Only a high-handed wrong intentionally directed against a defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense."[45] Despite the sequence of overreaching prior to the misconduct and prosecutor's experience in this case, the prosecutor cannot be considered to have

---

[40] *Kennedy*, 456 U.S. at 675.

[41] *Id.* at 680 (Powell, J., concurring); *Bailey*, 521 A.2d at 1079; *State v. Long*, 1992 WL 207258, at *2-4 (Del. Super. July 23, 1992).

[42] *Kennedy*, 456 U.S. at 680 (Powell, J., concurring); *Earnest v. Dorsey*, 87 F.3d 1123, 1130 (10th Cir. June 26, 1996); *Sullins v. State*, 930 A.2d 911, 916 (Del. July 23, 2007).

[43] *Hagege*, 437 F.3d at 953; *United States v. Rodriguez*, 229 Fed. Appx. 547, 548 (Apr. 24, 2007); *Long*, 1992 WL 207258, at *6.

[44] *Rodriguez*, 229 Fed. Appx. at 549; *Long*, 1992 WL 207258, at *3.

[45] *Sullins*, 930 A.2d at 916.

intended to goad the defendant into moving for a mistrial. Initially, he argued against a mistrial, and further some of the conduct that the defendant includes in his motion to dismiss occurred during the guilt phase of the trial, after the prosecutor had already obtained a conviction.

In instances where there is a sequence of overreaching prior to misconduct, Delaware courts will still rule that the prosecutor did not intend to goad the defendant into moving for mistrial in situations where the prosecutor argues against mistrial and appears surprised that the defendant moves for mistrial. For example, in *Sullins v. State*, without a prior *Flowers* hearing, the prosecutor asked a witness "whether he worked with an individual or an informant."[46] After the defendant moved for a mistrial, the court cautioned the prosecutor not to ask questions that would cause the witness to discuss what an informant told him.[47] On redirect, the prosecutor asked the witness to describe his role in what happened on a date.[48] The witness discussed his informant and information that the informant gave him.[49] The defendant moved for mistrial again, and the court denied the motion.[50] After the defendant then asked for a *Flowers* hearing and the court erroneously denied it, the court granted defendant's motion for mistrial, because defendant did not have an opportunity to have a *Flowers*

---

[46] *Id.* at 913.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

hearing prior to the trial.[51] When the defendant moved to dismiss the prosecution's attempt to retry the case, the court held that the Double Jeopardy Clause did not bar the State from retrying the case, since the prosecutor seemed surprised and argued against the mistrial motion.[52]

As in *Sullins*, in this case there was a sequence of overreaching prior to the misconduct. While the prosecutor in *Sullins* ignored his obligations under *Flowers*, the prosecutor in this case bolstered witnesses, repeatedly made inappropriate comments to the Defendant, and in one instance threatened the Defendant's safety.

There is an additional factor arguably indicating that the prosecutor intended to goad the defendant into moving for a mistrial, which is not present in *Sullins*. While the *Sullins* opinion does not mention the prosecutor's experience, in this case the prosecutor had 24 years of experience. This indicates that the prosecutor should have had some idea that his conduct could lead to a mistrial.

However, similar to *Sullins*, the Defendant in this case fought against mistrial. While in *Sullins*, the prosecutor fought against the mistrial motion filed in response to his own misconduct, in this case, as fully stated in the Facts and Procedures before footnote 2, the prosecutor noted a desire not to have a mistrial after misconduct on the part of Defendant.

Additionally, during the penalty phase of the trial which started on July 3, 2012, the prosecutor, two days into that phase, informed the Defendant that he would

---

[51] *Id.* at 913-14.

[52] *Id.* at 916.

*State v. McCoy*
ID No.: 1005008059A
December 14, 2016

make sure that it was public knowledge that Defendant "snitched" in this case, and that people in prison would pose problems for Defendant once it became known that he "snitched." Though this conduct is inexcusable, based on its timing post-conviction, it would have made no sense for the prosecutor to engage in an intention to provoke a mistrial.

Though, as the Supreme Court noted this was a close case, the prosecutor cannot be said to have intended to goad the defendant into moving for a mistrial. Again, he argued against a mistrial, and some of the conduct that the defendant included in his Motion to Dismiss occurred during the penalty phase of the trial, after the prosecutor had already obtained a guilty verdict. This result is especially the case when this Court considers the high standard to which conduct must reach in order to trigger double jeopardy protection.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED**.

       /s/ Robert B. Young
          J.

RBY/lmc
oc:   Prothonotary
cc:   Counsel
      Opinion Distribution